UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

ALVIN R. PINKARD,

                Plaintiff,

       v.

BALDWIN RICHARDSON FOODS CO., INC.,

                Defendant.

DECISION & ORDER

09-CV-6308T

---

        By order dated May 5, 2011, the above-captioned matter has been referred to the undersigned for the supervision of pretrial discovery and the hearing and disposition of all non-dispositive motions, pursuant to 28 U.S.C. §§ 636(b)(1)(A) and (B). (Docket # 31). On June 15, 2009, *pro se* plaintiff Alvin R. Pinkard ("Pinkard") filed this lawsuit against his former employer, Baldwin Richardson Foods Co., Inc. ("Baldwin"), under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17, alleging that Baldwin discriminated against him on the basis of his race. (Docket # 1).

        Currently pending before this Court is Pinkard's motion to compel production of personnel files of certain Baldwin employees. (Docket # 57). Specifically, Pinkard seeks an order compelling production of the personnel files for Candy Dwello ("Dwello"), Bill Evers ("Evers"), Joe Trish ("Trish"), Jerry Wade ("Wade"), Amy Ventura ("Ventura") and Bonnie Lawyer ("Lawyer"). (Docket # 57 at 1). Also pending is Baldwin's motion to compel discovery responses from Pinkard. (Docket # 59). Specifically, Baldwin seeks an order compelling Pinkard: (1) to provide a written response to Baldwin's document requests; (2) to produce his

state and federal income tax returns from 2007 to the present; (3) to produce any documents in his possession from any entity or agency that has provided any income, benefits or public assistance to him from 2008 to the present; (4) to produce complete copies of all documents reflecting or relating to Pinkard's claim for damages; and, (5) to identify all medical providers not previously identified who have provided services to Pinkard in the last two years and to provide authorizations to obtain his medical records from them. (Docket # 59-3 at 4). In the alternative, Baldwin seeks an order precluding Pinkard's claims for damages. (*Id.*). Baldwin also seeks to compel production of an investigator's report prepared at the direction of Pinkard's prior counsel. (*Id.*). Finally, Baldwin seeks an award of attorney's fees against Pinkard in connection with its motion. (*Id.* at 18).

Also pending before this Court is Pinkard's motion for a change of venue. (Docket # 67). The motion is based upon his belief that he is unable to obtain unbiased treatment of this case in the Western District of New York. (*Id.*).

For the reasons set forth below, both parties' motions to compel are granted in part and denied in part, Baldwin's motion for sanctions is denied, and Pinkard's motion for a change of venue is denied.

I.  **Pinkard's Motion to Compel**

   A.  **Pinkard's Request for Personnel Files**

Pinkard seeks to compel production of the entire contents of the personnel files of Dwello, Evers, Trish, Wade, Ventura and Lawyer, each of whom are current or former employees of Baldwin. (Docket # 57 at 1-2). According to Pinkard, Baldwin promoted Ventura and Evers,

2

but did not promote him.  (*Id.* at 3).  Pinkard asserts that Trish, Wade and Lawyer treated him in a discriminatory manner during his employment.  (*Id.*).  Finally, Pinkard contends that Dwello and Ventura[1] both accused Pinkard of sexual harassment, which led to Pinkard's termination.  (*Id.*).

Baldwin opposes the motion on the grounds that it has complied with the Court's previous rulings regarding the production of personnel files for Dwello, Evers and Lawyer.  (Docket # 60 at ¶ 17).  In addition, Baldwin contends that Pinkard never served Baldwin with a written request for the production of the personnel files of Ventura, Trish or Wade.  (*Id.* at ¶ 24).  In any event, according to Baldwin, it does not have personnel files for Trish or Ventura and thus cannot be compelled to produce those files.  (*Id.* at ¶ 31).  Baldwin represents that it has reviewed Wade's personnel file and determined that it contains no documents relevant to this action.  (*Id.*).

This Court has already considered and ruled on the proper scope of production for the personnel files of Dwello, Evers and Laywer.  (Docket # 47 at ¶ 3).  The relevance of the personnel files for these employees was discussed at length during the course of two prior conferences with the Court on November 17, 2011 and December 9, 2011.[2]  (Docket ## 43, 49).  During those conferences, this Court instructed Baldwin to produce relevant portions from these employees' files.  Specifically, with respect to Dwello's personnel file, the Court directed

---

[1] Baldwin maintains that Amy Ventura was not one of the four employees who accused Pinkard of sexual harassment.  (Docket # 60 at ¶ 27).  According to Baldwin, Amy McClure was the employee who accused Pinkard of sexual harassment.  (*Id.*).  Baldwin suggests that Pinkard may have confused Amy Ventura with Amy McClure.  (*Id.*).  In any event, Baldwin represents that Amy McClure's personnel file has been reviewed and any documents encompassed within the Court's previous ruling have been produced.  (Docket # 53 at 3).

[2] Each of these conferences was electronically recorded, and those recordings were reviewed in connection with the issuance of this Decision and Order.  Any recitation concerning the events that transpired at these conferences is based upon this Court's review of those recordings.

Baldwin to review the file and produce "any documents concerning claims made by or against [her] for sexual harassment." (Docket # 47 at ¶ 3(a)).[3] Baldwin represents that it has reviewed Dwello's file and has produced any documents responsive to the Court's directive. (Docket # 53 at 3).

With respect to Bill Evers's personnel file, Pinkard argued during the December 9, 2011 conference that the file was relevant to his claims because Evers was a Caucasian employee who had been promoted when Pinkard was not. Based upon Pinkard's representation, the Court directed Baldwin to review Evers's file and produce documents "relating to positions held, promotions, rates of pay, and the reasons for promotion." (Docket # 47 at ¶ 3(b)).[4] In response, Baldwin reviewed Evers's personnel file and determined that Evers had not been promoted. (Docket # 60 at ¶¶ 17, 28). Accordingly, Baldwin did not produce any documents from Evers's file. Pinkard now suggests that even if Evers had not been promoted, he received "job opportunities and training thru-out [*sic*] the plant." (Docket # 57 at 3).

Finally, with respect to Lawyer's personnel file, Pinkard explained that he had complained that Laywer had treated him in a racially discriminatory manner and believes that Baldwin conducted an investigation of his complaints, which may have resulted in a disciplinary action against Lawyer. Based upon this argument, the Court directed Baldwin to review Lawyer's file and produce any documents in the file "referencing any complaint she made about plaintiff or any complaint plaintiff made about her, and any related investigation and/or

---

[3] The Court also directed Baldwin to review and produce relevant portions of the files of Amy McClure, Dawn Rooker and Elaine Perry. (*Id.*).

[4] The Court made a similar ruling with respect to Pinkard's request for personnel files of an employee named Jim Howard. (*Id.*). Baldwin produced documents from Howard's file, and Pinkard does not seek to compel additional records from Howard's personnel file. (Docket # 60 at ¶ 17).

discipline." (Docket # 47 at ¶ 3(d)).  Baldwin reviewed Lawyer's file, and identified no responsive documents and produced no documents from her file.  (Docket # 53 at 5; Docket # 60 at ¶ 17).

With respect to the personnel files of Trish and Ventura, Baldwin has represented that it does not possess personnel files for either of these individuals and thus has no responsive documents to produce.  (Docket # 60 at ¶ 31).  Baldwin represents that it has reviewed Wade's personnel file, has identified no documents relating to Pinkard's allegation that Wade treated him in a "racial manner" and therefore has produced no documents from Wade's file.  (*Id.*).

 B.  <u>Discussion</u>

This Court has reviewed its prior orders regarding Pinkard's request for production of employee personnel files for Dwello, Evers and Lawyer.  Baldwin has represented that it has reviewed their files and has produced documents in accordance with the Court's directive.  Nothing in the record suggests any reason to doubt counsel's representation.  With respect to Evers, however, Pinkard now maintains that even if Baldwin did not promote Evers, it provided him with training and job opportunities that it denied to Pinkard.  On the basis of this clarification, Baldwin is directed to review again Evers's personnel file and produce any documents reflecting any training, education or career advancement opportunities that were offered to Evers during the period of Pinkard's employment with Baldwin (October 2005 through June 2008).  (Docket # 1 at ¶¶ 7-8).

With respect to Pinkard's requests for personnel records of Ventura and Wade, Baldwin is directed to conduct an additional review for responsive documents as set forth below.  With respect to Ventura, Baldwin claims it does not have a personnel file for her because she was

hired through a temporary staffing agency. Baldwin is directed to determine, if it has not already, whether it may obtain copies of the agency's personnel file relating to Ventura's employment or association with Baldwin.[5] If so, Baldwin is directed to review the records to identify any documents concerning allegations of sexual harassment by her or promotions, training or job opportunities received by her during the period between October 2005 and June 2008.

With respect to Wade's personnel file, Baldwin has represented that the file does not contain any documents pertaining to Pinkard's complaints that Wade treated him in a "racial manner." In correspondence, Pinkard has made references to individuals named "Jerry Lee," "Jerry Wade" and "Jerry Lee Wade," which suggests that Wade is the same individual as "Jerry Lee." Indeed, Baldwin has also referred to an individual named "Jerry Lee Wade." (Docket # 60 at ¶ 24). This Court previously directed Baldwin to review the personnel file of "Jerry Lee" and produce any documents "related to complaints made against [him] for race discrimination or racial epithets, and any documents concerning discipline for that conduct or that reflect complaints to supervisors about such conduct." (Docket # 47 at ¶ 3(c)). In response, Baldwin indicated that it had "no personnel file for an individual named Jerry Lee" and therefore had no responsive documents. (Docket # 53 at 4). Accordingly, Baldwin is directed to review Wade's personnel file and produce any documents that would be responsive to the direction set forth in ¶ 3(c) of the Court's Order dated December 15, 2011. (*See* Docket # 47).

---

[5] Pursuant to Rule 34, parties are permitted to request documents that are in the "responding party's possession, custody or control." Fed. R. Civ. P. 34(a). "Under Rule 34, 'control does not require that the party have legal ownership or actual physical possession of the documents at issue; rather, documents are considered to be under a party's control when that party has the right, authority, or practical ability to obtain the documents from a non-party to the action.'" *In re NTL, Inc. Sec. Litig.*, 244 F.R.D. 179, 195 (S.D.N.Y.) (quoting *Bank of New York v. Meridien BIAO Bank Tanzania Ltd.*, 171 F.R.D. 135, 146-47 (S.D.N.Y. 1997)), *aff'd*, 2007 WL 1518632 (S.D.N.Y. 2007).

Finally, with respect to Pinkard's motion to compel production of Trish's personnel file, Baldwin has represented that it does not have records of any employee named Trish. Pinkard's motion to compel production of the personnel file of Trish is thus denied. *See Breedlove v. Mandell*, 2008 WL 596864, *2 (W.D.N.Y. 2008) (denying motion based on party's representation that it had no record of requested document because "[c]ourt cannot compel production of what does not exist") (quoting *American Banana Co. v. Republic Nat'l Bank of New York, N.A.*, 2000 WL 521341, *3 (S.D.N.Y. 2000)).

### II. Baldwin's Motion to Compel

Baldwin seeks to compel Pinkard to produce certain categories of documents and information and to provide written responses to its document requests. (Docket # 59-1 at ¶ 10). In general, Baldwin's requests sought Pinkard to supplement his previous discovery responses to include sources of income between 2007 and the present and to identify any medical providers, not previously identified, who provided Pinkard with medical services between 2008 and the present. (*Id.* at ¶ 16).

Specifically, Baldwin seeks to compel the following: (1) a written response to Baldwin's document requests; (2) production of Pinkard's state and federal income tax returns from 2007 to the present; (3) production of documents in Pinkard's possession from any entity or agency that has provided income, benefits or public assistance to Pinkard from 2008 to the present; (4) production of documents reflecting or relating to Pinkard's claim for damages; and, (5) identification of, and an authorization to obtain medical records from, any previously

undisclosed medical providers who have provided services to Pinkard in the last two years. (Docket # 59-3 at 4).

Pinkard's responses to Baldwin's discovery demands have been the subject of two lengthy court conferences. During the November 17, 2011 conference, the Court reviewed both the interrogatories and document requests that had been served by Baldwin. The Court attempted to clarify with Pinkard his obligations to respond to the outstanding discovery requests. After the conference, the Court issued a scheduling order that required Pinkard to respond to the supplemental discovery requests by no later than December 2, 2011. (Docket # 45 at ¶ 1).

The Court again addressed with Pinkard the subject of Baldwin's supplemental discovery requests during the December 9, 2011 status conference. Pinkard was reminded of his obligation to respond to the discovery requests and was provided again with copies of both the interrogatories and document requests. Finally, the Court cautioned Pinkard that he could face sanctions if he failed to comply with his discovery obligations. After the conference, the Court issued a scheduling order that extended the deadline for Pinkard's discovery responses until December 23, 2011. (Docket # 47 at ¶ 1).

On December 16, 2011, Pinkard provided Baldwin with various documents responsive to its requests, including documents from the Social Security Administration and the New York State Office of Temporary Disability Assistance, handwritten notes relating to Pinkard's employment at Baldwin and a handwritten list identifying medical providers. (Docket # 48). On December 22, 2011, Pinkard sent Baldwin responses to the interrogatories, witness statements, tax return documents, medical documents and other miscellaneous documents. (Docket # 50; # 59-1 at ¶ 25).

Baldwin contends that Pinkard's responses to its document requests are deficient for several reasons. First, Baldwin contends that Pinkard has never provided a written response to its document requests. (Docket # 59-1 at ¶ 31). In addition, Baldwin claims that Pinkard has failed to identify all of the medical providers he has seen since 2008. (*Id.* at ¶¶ 27-28). Baldwin also claims that Pinkard has failed to provide copies of federal tax returns and social security documents even though he had informed Baldwin's counsel that he was attempting to obtain copies of those documents from the appropriate agencies. (*Id.* at ¶¶ 29, 31). Further, Baldwin's counsel contends that Pinkard indicated to her that he was receiving Medicaid benefits, but he has not provided any documents concerning those benefits. (*Id.* at ¶ 29). In addition, Baldwin claims that Pinkard may have received benefits from the Wayne County Department of Social Services and may have received Supplemental Security Income Benefits, but has not provided documents reflecting receipt of these benefits. (Docket # 63 at ¶¶ 2-3). According to Baldwin, Pinkard has failed to complete and return an authorization to permit Baldwin to obtain records from the Wayne County Department of Social Services. (*Id.*). Finally, Baldwin contends that Pinkard notified its counsel that he had located additional W-2 forms, but has not provided them. (Docket # 59-1 at ¶ 26).

Pinkard opposes Baldwin's motion to compel, arguing that he has attempted to comply with his discovery obligations. (Docket # 61 at 2). In addition, Pinkard contends that "all the information that [he possesses, he has] given to the defendant." (*Id.* at 3). Pinkard further asserts that his ability to respond to Baldwin's discovery requests is hampered by his *pro se* status. (*Id.* at 3-4).

A. **Responses to Document Requests**

Rule 34 of the Federal Rules of Civil Procedure provides that a party to whom a request for the production of documents is directed "must respond in writing within 30 days after being served." Fed. R. Civ. P. 34(b)(2)(A). Baldwin served Pinkard with a supplemental request for production of documents on September 6, 2011 and has not received a written response from him. At both conferences conducted on November 17, 2011 and December 9, 2011, this Court directed Pinkard to provide a written response. In addition, this Court's orders dated November 28, 2011 and December 15, 2011 also directed Pinkard to respond to the document requests in writing. (Docket ## 45, 47).

Given Pinkard's *pro se* status and the record reflecting his attempts to comply with his other discovery obligations, this Court will provide Pinkard one additional opportunity to respond to Baldwin's document requests in writing without imposing sanctions. Baldwin is directed to provide Pinkard with an additional copy of the requests by no later than **April 5, 2013**. Pinkard must respond to the requests in writing by no later than **April 26, 2013** indicating whether he has produced all of the documents in his possession that are responsive to the requests. If Pinkard has not produced all responsive documents in his possession, custody or control, he must confirm in writing that he is withholding documents, identify the documents he is withholding and provide the basis for withholding them.

B. **Documents Reflecting Income or Other Benefits**

Baldwin continues to question the completeness of Pinkard's production of documents reflecting his receipt of income and benefits since 2007. According to Baldwin's counsel, Pinkard has indicated that he has responsive W-2 documents and that he was attempting

to obtain additional tax returns and benefits records. Baldwin also contends that Pinkard has failed to provide any Medicaid documents and has failed to provide an authorization to permit Baldwin to obtain records from the Wayne County Department of Social Services.

Pinkard's claim seeks damages from Baldwin arising from his alleged wrongful termination. (Docket # 1 at 11). Accordingly, Baldwin is entitled to obtain discovery regarding Pinkard's post-termination income. *See Barney v. Consol. Edison Co. of New York*, 2006 WL 4401019, *13 (E.D.N.Y. 2006) (sources of post-termination income are relevant to damages), *report and recommendation adopted*, 2007 WL 952035 (E.D.N.Y. 2007); *Sadowski v. Technical Career Insts., Inc.*, 1994 WL 593765, *1 (S.D.N.Y. 1994) ("information relating to plaintiff's post-termination . . . income is directly relevant to the measurement of plaintiff's damages"). Pinkard does not dispute that Baldwin is entitled to discovery concerning his income. (Docket # 61 at 3) ("I have no problem giving [Baldwin] that sort of information"). Accordingly, the Court directs Pinkard to provide to Baldwin's counsel by no later than **April 26, 2013** any income-related documents currently in his possession, including any W-2 forms, tax returns, Social Security Administration or Medicaid records or documents. Baldwin is further directed to provide authorizations to Pinkard by no later than **May 3, 2013**, with a copy to this Court, to permit it to obtain records from any social services agency reflecting income and benefits received by Pinkard. Pinkard is directed to complete and return the authorizations to Baldwin by no later than **May 10, 2013**.

### C. Identity of Medical Providers

Despite Pinkard's efforts to comply with Baldwin's requests concerning the identity of his medical providers, Baldwin also questions the completeness of his response.

11

Specifically, Pinkard previously identified "Dr. Lauren Sahler" as a medical provider, but Baldwin has been unable to locate any provider named "Dr. Lauren Sahler" in the Rochester area. In addition, according to Baldwin, medical documents indicate that two providers named "Lurie"[6] and "Downing" also may have provided services to him. Pinkard is directed to inform Baldwin by no later than **April 26, 2013**, whether he has received medical services from "Lurie," or "Downing." In addition, Pinkard must inform Baldwin whether he received services from "Dr. Lauren Sahler" or if instead he was provided services by another doctor. Pinkard must provide Baldwin contact information for these providers. Baldwin is directed to provide Pinkard with authorizations for any additional medical providers identified by no later than **May 3, 2013**, and Pinkard is directed to complete and return the authorizations to Baldwin by no later than **May 10, 2013**.

### D. Flecus Report

Pinkard previously was represented by Christina A. Agola, Esq. ("Agola") in this lawsuit. (Docket # 23).[7] During the course of that representation, Agola retained a private investigator to investigate Pinkard's claims of employment discrimination. (Docket # 59-1 at ¶ 38). The investigator, Bill Flecus, apparently prepared a report (the "Flecus Report"),[8] which is now in Pinkard's possession. (*Id.* at ¶ 38).

---

[6] The Court notes that the list of medical providers that Pinkard gave to Baldwin contains a reference to a "Stephen Lurie" and provides contact information for him. (Docket # 48 at 13).

[7] Ms. Agola was permitted to withdraw as Pinkard's attorney on February 18, 2011. (*Id.*).

[8] It is not clear whether the report is one document or consists of multiple documents. References to the "Flecus Report" herein refer to the report and any other material or notes prepared by Flecus.

On February 23, 2012, Pinkard sent a letter to the Court concerning his ongoing discovery dispute with Baldwin. (*Id.* at Exhibit ("Ex.") I). In relevant part, the letter expressed his belief that certain personnel files in Baldwin's possession contained relevant documents that Baldwin had not produced. (*Id.*). With respect to Jerry Jones's personnel file, Pinkard explained that the Flecus Report indicated that Jones had stated during an interview that he had been investigated for alleged sexual harassment while employed at Baldwin. (*Id.*) Crediting that statement, Pinkard argued that Jones's personnel file should have contained documents about the investigation, although none had been produced. (*Id.*).

Baldwin claims that Pinkard's disclosure of that portion of the Flecus Report in his letter to the Court was intended to "bolster" his employment discrimination claims and operated to waive any work product protection to which the report was otherwise entitled. (*Id.* at ¶ 38). Pinkard disagrees that he included the excerpt in an attempt to "bolster" his case, but rather claims he disclosed the statement to demonstrate that Baldwin likely had failed to produce relevant documents from Jones's file. (Docket # 61 at 1).

Rule 26 of the Federal Rules of Civil Procedure provides that, in general, "a party may not discover documents . . . that are prepared in anticipation of litigation or for trial by or for another party or its representative." Fed. R. Civ. P. 26(b)(3)(A). The Flecus Report was prepared by a private investigator at the direction of Pinkard's former counsel, and Baldwin's counsel does not dispute that the report is entitled to work product protection. *See Costabile v. Westchester, New York*, 254 F.R.D. 160, 163-164 (S.D.N.Y. 2008) (report prepared by private investigator at the request of plaintiff's former counsel in anticipation of litigation was entitled to

work product protection). Instead, the dispute concerns whether Pinkard's disclosure in his letter to the Court operated to waive the work product protection for the rest of the report.

Of course, "[t]he privilege derived from the work-product doctrine is not absolute . . . [and] may be waived." *United States v. Nobles*, 422 U.S. 225, 239 (1975). The scope of any waiver resulting from the intentional disclosure of work product protection is governed by Federal Rule of Evidence 502(a). *Seyler v. T-Systems N. Am., Inc.*, 771 F. Supp. 2d 284, 287-88 (S.D.N.Y. 2011). Rule 502(a) provides that disclosures made in a federal proceeding will waive work product protection as to an undisclosed communication or information only if: "(1) the waiver is intentional; (2) the disclosed and undisclosed communications or information concern the same subject matter; and (3) they ought in fairness to be considered together." Fed. R. Evid. 502(a).

Rule 502(a) narrowly construes subject matter waiver for disclosures of work product information. *See Seyler v. T-Systems N. Am., Inc.*, 771 F. Supp. 2d at 288. Specifically, "a subject matter waiver . . . is reserved for those unusual situations in which fairness requires a further disclosure of related, protected information, in order to prevent a selective and misleading presentation of evidence to the disadvantage of the adversary . . . [and] is limited to situations in which a party intentionally puts protected information into the litigation in a selective, misleading and unfair manner." *Id.* (quoting Federal Rule of Evidence 502(a) Advisory Committee Note); *see Chick-fil-A v. ExxonMobil Corp.*, 2009 WL 3763032, *4 (S.D. Fla. 2009) ("Federal Rule of Evidence 502(a) curtails prior waiver doctrine significantly[;] [i]t directs that . . . disclosure does not work a waiver of protections for material on the same subject matter beyond that disclosed unless it was intentional and the additional materials 'ought in fairness be

considered' together with the protected materials turned over by the privilege holder") (quoting Charles A. Wright, Arthur R. Miller, and Richard L. Marcus, *Federal Practice and Procedure* § 2016.2 (3d ed. 2009 Supplement)).

Pinkard intentionally disclosed a portion of the Flecus Report in order to demonstrate the basis for his belief that Jones's personnel file likely contained relevant documents that had not been produced. Baldwin has not proffered any reason to believe that any other portion of the report, let alone the entirety of the report, is relevant to the question whether Baldwin investigated allegations that Jones engaged in sexual harassment. Under these circumstances, I cannot conclude that fairness requires disclosure of the entire Flecus Report. Accordingly, Baldwin's motion to compel production of the entire Flecus report is denied.

Of course, if Pinkard intends to seek to introduce any portion of the Flecus Report to prove his claims, he must promptly provide a copy of the Flecus Report to Baldwin's counsel. Pinkard is also cautioned that any additional disclosure of any portions of the Flecus Report to this Court or any other party may operate to waive its work product protection, requiring Pinkard to disclose the report to Baldwin.

### E. Attorney's Fees

Rule 37 of the Federal Rules of Civil Procedure provides that if a motion to compel is granted, or if the "requested discovery is provided after the motion was filed – the court *must*, after giving an opportunity to be heard, require the party . . . whose conduct necessitated the motion . . . to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A) (emphasis added); *see also Corporation of Lloyd's v. Lloyd's U.S.*, 831 F.2d 33, 36 (2d Cir. 1987) (referencing Rule 37's

directive that courts "shall" impose costs) (citing *National Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 642 (1976)).  A court may elect not to award fees if:  (1) the movant did not make a good faith effort to resolve the dispute before filing the motion; (2) the non-moving party's failure to provide the discovery response was "substantially justified"; or, (3) the award of fees would be unjust.  Fed. R. Civ. P. 37(a)(5)(A)(i)-(iii).

Baldwin has requested that the Court order Pinkard to pay Baldwin's attorney's fees incurred in connection with its motion to compel.  (Docket # 59-3).  According to Baldwin, an award of fees is warranted because Pinkard "has ignored his obligation to respond to [Baldwin's] discovery requests . . . and has failed repeatedly to comply with the Court's Orders." (*Id.* at 19).  The record in this matter demonstrates that Pinkard did attempt, albeit imperfectly, to comply with his discovery obligations in December 2011.  Indeed, the record reveals that Pinkard sent Baldwin numerous documents relating to his income, a list of medical providers and answers to Baldwin's interrogatories.  (Docket ## 48, 50-51).  Although Pinkard has failed to respond to some of Baldwin's inquiries and has failed to provide a written response to Baldwin's document requests as ordered by the Court, I conclude that an award of fees on this record is not justified.  *See Dew v. 39th St. Realty*, 2001 WL 388053, *3 (S.D.N.Y. 2001) (declining to award fees because "even a minimal fine would be a significant economic hardship" given plaintiff's *pro se* and *informa pauperis* status); *Kane v. Eight E. Eighty Third St. Apts., Inc.*, 1984 WL 644, *1 (S.D.N.Y. 1984) ("*pro se* status and presumable lack of familiarity with the rules governing the conduct of litigation make an award of attorney's fees unduly harsh at this time").

Although I decline to award attorney's fees to Baldwin, I caution Pinkard that he must comply with his discovery and court-ordered obligations, including his obligation to

16

provide timely responses as set forth in this Order. Any failure to do so may result in sanctions, including dismissal of Pinkard's complaint and/or the imposition of attorney's fees.[9]

### III. Pinkard's Motion to Change Venue

Pinkard has filed a motion seeking a change of venue from the Western District of New York to the Northern District of New York. (Docket # 67). In support of the motion, Pinkard argues that he has "experienced bias, prejudice and unprofessional treatment and resistance to treat my case fairly" in the Western District of New York. (*Id.* at 1).

Motions to transfer venue are governed by 28 U.S.C. § 1404(a), which provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."[10]  28 U.S.C. § 1404(a). Transfer is only permitted if venue would have been proper in the proposed district. *See Kampfer v. Scullin*, 989 F. Supp. 194, 198 (N.D.N.Y. 1997).

---

[9] In addition to its request for an order compelling Pinkard to provide discovery, Baldwin's motion seeks, in the alternative, an order precluding Pinkard from offering evidence in support of his claim for damages. (Docket # 59-3 at 4). Because the Court has granted Baldwin's motion to compel, it denies Baldwin's alternative request for a preclusion order.

[10] The venue statute, 28 U.S.C. § 1404, was recently amended to provide that district courts may also transfer civil actions "to any district or division to which all parties have consented." Federal Courts Jurisdiction and Venue Clarification Act of 2011, Pub. L. No. 112-63, § 204, 125 Stat. 758, 764 (2011) (the "Act"). Congress specified that the amendments are applicable only to actions commenced on or after the effective date of January 6, 2012. *Id.* at § 205, 125 Stat. at 764. Because this action was commenced on June 15, 2009, the amendments are not applicable to this action, and the prior version of the statute (quoted above) applies. *See Bayerische Landesbank, New York Branch v. Aladdin Capital Mgmt. LLC*, 692 F.3d 42, 51 (2d Cir. 2012) (applying prior version of 28 U.S.C. § 1332(c) to action commenced after effective date of the Act); *Tross v. Ritz Carlton Hotel Co.*, 2013 WL 836721, *4 n.4 (D. Conn. 2013) (applying prior version of 28 U.S.C. § 1404 to action commenced prior to effective date of the Act). Accordingly, the question of whether the parties would consent to transfer of this matter to the Northern District of New York is not relevant.

To determine whether venue in this case would be proper in the Northern District of New York, the court must consider 28 U.S.C. § 1391(b), which provides:

> A civil action . . . may . . . be brought only in (1) a judicial district where defendant resides . . . , (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . , or (3) a judicial district in which any defendant may be found, if there is no district in which the action might otherwise be brought.

28 U.S.C. § 1391(b).[11]  Pinkard has not asserted any facts to support a finding that venue would be proper in the Northern District of New York, and his motion to transfer venue is thus denied. *See Stewart v. Stoller*, 2013 WL 214375, *1 (D. Utah 2013) (denying motion to transfer where transferee court was not proper venue and where movant argued that transfer was necessary because she could not obtain a fair trial in district where case was venued); *Hung Nam Tran v. Timberlake*, 2009 WL 4110441, *2 (W.D. Wis. 2009) ("[a]s for plaintiffs' motion [to] transfer venue, they offer no basis for transfer other than bias, which is not a ground for transfer"); *Vasile v. Dean Witter Reynolds Inc.*, 20 F. Supp. 2d 465, 498 (E.D.N.Y. 1998) (denying motion to transfer venue where movant's sole basis for transfer was alleged bias of the court), *aff'd*, 205 F.3d 1327 (2d Cir. 2000).

To the extent that Pinkard's motion seeks this Court's recusal under 28 U.S.C. § 455, that motion is also denied.  Pinkard suggests that this Court is biased towards him as evidenced by two decisions denying his request for appointment of counsel.  "[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion."  *D'Amato v. Carway*, 112 F. App'x 108, 109 (2d Cir. 2004) (quoting *Liteky v. United States*, 510 U.S. 540, 555

---

[11] For the reasons stated in footnote 10, *supra* the previous version of 28 U.S.C. § 1391(b) has been quoted and applies in this action.


(1994)). *See Allstate Enters., Inc. v. Amendola*, 1988 WL 87916, *3 (W.D.N.Y. 1988) ("[t]he fact that a judge has previously rendered an adverse decision against a party is not sufficient to show bias or prejudice"). I have reviewed Pinkard's remaining arguments and determine that they are likewise insufficient to meet his burden of showing that "a reasonable person would conclude that [the Court] is biased or prejudiced against [Pinkard]."[12] *See Allstate Enters., Inc. v. Amendola*, 1988 WL 87916 at *3. Accordingly, Pinkard's motion for transfer of venue is denied.

## CONCLUSION

For the reasons discussed above, Pinkard's motion to compel **(Docket # 57)** is **GRANTED in part and DENIED in part**, Baldwin's motion to compel and for sanctions **(Docket # 59)** is **GRANTED in part and DENIED in part**, and Pinkard's motion to transfer venue **(Docket # 67)** is **DENIED**.

**IT IS SO ORDERED.**

                                              *s/Marian W. Payson*
                                                MARIAN W. PAYSON
                                                United States Magistrate Judge

Dated: Rochester, New York
        March   28   , 2013

---

[12] Pinkard contends that I somehow dissuaded an attorney from representing him in this case. Of course, I did not, and would not, advise an attorney whether or not to take on a particular representation. To the best of my fairly vague recollection, during a very brief exchange, the attorney expressed some belief that the case was dormant or that there were discovery disputes that had not been addressed, and I advised him that the case was active and suggested he review the docket. The attorney evidently decided not to take on the representation.